IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HILARY M. LEO,

       Plaintiff,

vs.                                                    1:18-cv-00977-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

       Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Hilary M. Leo's Motion to Reverse

and Remand Administrative Agency Decision and her memorandum in support of the motion,

filed on May 14, 2019.  Docs. 19, 20.  Ms. Leo's motion was fully briefed on October 17, 2019.

*See* Docs. 24, 25, 29, 30, 31.[2]  The parties consented to my entering final judgment in this case.

Docs. 10, 16, 17.  Having meticulously reviewed the record, read the briefing, and being fully

advised in the premises, I find that the Administrative Law Judge's ("ALJ") decision at step five

was not supported by substantial evidence.  I therefore GRANT Ms. Leo's motion and

REMAND this case to the Commissioner for further proceedings.

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action.  FED. R. CIV. P. 25(d).

[2] Ms. Leo filed a Notice of Supplemental Authorities on January 28, 2020, and the Commissioner filed a response to that notice on February 4, 2020.  Docs. 32, 33.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background and Procedural History

Ms. Leo was born on November 25, 1987.  AR 94, 286, 288, 304, 361, 364.[5]  She completed high school with special education classes, and attended some college classes.  AR 68 (Ms. Leo testified she did not complete her college classes), 308 (noting Ms. Leo completed two years of college).  Ms. Leo lives alone in Albuquerque.  AR 22, 69, 322, 347.  Ms. Leo has worked as a fast food worker and cashier.  AR  66, 79, 81, 339–40.  Ms. Leo's adoptive mother filed an application on Ms. Leo's behalf for Child's Insurance Benefits under Title II ("CIB")[6] on July 23, 2014, when Ms. Leo was 26 years old.  AR 286–87.  Ms. Leo also filed an application for Disability Insurance Benefits ("DIB") on July 23, 2014.  AR 288–89.  Both applications alleged disability since April 1, 1991—when Ms. Leo was 4 years old—due to anxiety disorder, bipolar disorder, Asperger's syndrome, and chondromalacia.[7]  AR 94–95, 103, 268–89, 307, 361, 364.  The Social Security Administration ("SSA") denied both Ms. Leo's CIB and DIB claims initially and on reconsideration.  AR 94–134.  Ms. Leo requested a hearing before an ALJ.  AR 164–65.  On June 22, 2017, ALJ Ann Farris held a hearing.  AR 59–93.  ALJ Farris issued her unfavorable decision on August 2, 2017.  AR 36–58.

---

[5] Document 12-1 is the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[6] To be eligible for adult disabled child benefits based on the earnings record of an insured parent, the claimant must be over the age of 18, unmarried, and found disabled before her twenty-second birthday.  *Madrick v. Colvin*, 200 F. Supp. 3d 1211, 1212 (D. Kan. 2016) (citing 20 C.F.R. § 404.350(a) (2016)).

[7] In the Disability Determination Explanations, "chondromalacia" is misspelled as "ghondromalacia."  *Compare* AR 94, 103, and 307 *with* AR 606.  "Chondromalacia patella (knee pain) is the softening and breakdown of the tissue (cartilage) on the underside of the kneecap (patella).  Pain results when the knee and the thigh bone (femur) rub together." https://my.clevelandclinic.org/health/diseases/15607-knee-pain-chondromalacia-patella (last visited 2/4/2020).

The ALJ found that Ms. Leo met the insured status requirements of the Social Security Act through September 30, 2009, and attained the age of twenty-two on November 25, 2009.[8] AR 42. At step one, the ALJ found that Ms. Leo had not engaged in substantial, gainful activity "during the period from her date first insured January 1, 2006 through her date last insured of September 30, 2009 and/or the attainment of the 22nd birthday on November 25, 2009." *Id.* At step two, the ALJ found that Ms. Leo's Asperger's syndrome, generalized anxiety disorder, major depressive disorder, obesity, and chondromalacia of patella were severe impairments. *Id*. At step three, the ALJ found that none of Ms. Leo's impairments, alone or in combination, met or medically equaled a Listing. AR 43–45. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Leo's RFC. AR 45–50. The ALJ found Ms. Leo had the RFC to

> perform a limited range of sedentary work as defined in 20 CFR 404.1567(a). The claimant can stand two hours in an eight-hour workday; sit six hours in an eight[-]hour workday; lift/carry ten pounds occasionally in an eight[-]hour workday. The claimant can make simple decision[s] with few workplace changes. The claimant is limited to no interaction with the public, occasional and superficial interaction with co-workers, and the claimant should not be required to do math calculations as part of her job duties.[9]

---

[8] In her decision, the ALJ states that Ms. Leo "attained age 22 as of November 24, 2009." AR 42. The November 24, 2009 date is clearly a typographical error as Ms. Leo's birthday is November 25, 1987. AR 42, 288.

[9] At the hearing the ALJ posed the following hypothetical to the VE:

> So assuming the person of the same age, education, and work history as the claimant, is limited to sedentary work; can make simple work-related decision[s] with few workplace changes, should have no interaction with the general public; only occasional and superficial interactions with coworkers, and should not be required to perform math calculations **such as a teller, or a cashier**.

AR 81 (emphasis added). The RFC in the ALJ's decision omits the emphasized phrase. AR 45. The parties do not address whether this is a difference that changes the meaning of the

AR 45.

At step four, the ALJ concluded that Ms. Leo had no past relevant work because none of her past work was considered substantial gainful activity. AR 50. Also, Ms. Leo had not worked long enough to learn the jobs she had performed. *Id*. At step five, the ALJ found that through the date last insured and/or prior to attaining the age of 22, Ms. Leo was able to perform work that existed in sufficient numbers in the national economy—including toy stuffer, eyeglass polisher, and addresser. AR 50–51. The ALJ thus found Ms. Leo not disabled at step five. AR 52.

Ms. Leo requested that the Appeals Council review the ALJ's unfavorable decision. AR 262–85. On August 24, 2018, the Appeals Council denied the request for review. AR 1–7. Ms. Leo timely filed her appeal to this Court on October 21, 2018. Doc. 1.[10]

## IV.  Ms. Leo's Claims

Ms. Leo raises four main arguments and several sub-arguments for reversing and remanding this case: (1) Ms. Leo alleges that the ALJ erred at step two in determining that she did not suffer from a severe mental impairment based on her diagnosis of migraine headaches; (2) the ALJ erred at step three by failing to analyze Listing 12.11; (3) the ALJ erred at step five by failing to establish that there is other work in the national economy that Ms. Leo can perform; and (4) the ALJ did not have the authority to hear her claim because she was not properly appointed under the Appointments Clause of the Constitution at the time of the hearing ("*Lucia Error*"). Doc. 20 at 2, 19–28. Because I find that the ALJ erred at step five by not resolving an

_____

hypothetical or the RFC. On remand, the ALJ should make sure that the RFC in her decision is consistent with the hypothetical posed to the ALJ.

[10] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2–3.

apparent conflict between the VE testimony and the DOT, remand is warranted.

## V.     Analysis

A.  <u>The ALJ Did Not Commit Reversible Error at Step Two</u>.

Ms. Leo contends that the ALJ erred at step two by failing to find that her migraine

headaches were not a severe impairment.  Doc. 20 at 22–23; Doc. 25 at 3–5.[11]  Ms. Leo's

argument fails as a matter of law.

> An impairment is "severe" if it "significantly limits [a claimant's] physical
> or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  A
> claimant must make only a de minimis showing to advance beyond step two.
> *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).  To that end, a
> claimant need only establish, and an ALJ need only find, one severe impairment.
> *See Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir. 2007) (noting that, for
> step two, the ALJ explicitly found that the claimant "suffered from severe
> impairments," which "was all the ALJ was required to do").  The reason is
> grounded in the Commissioner's regulation describing step two, which states:  "If
> you do not have a severe medically determinable physical or mental impairment
> . . . or a combination of impairments that is severe . . ., we will find that you are
> not disabled."  20 C.F.R. § 404.1520(a)(4)(ii) (emphasis added).  By its plain
> terms, the regulation requires a claimant to show only "a severe" impairment—
> that is, one severe impairment—to avoid a denial of benefits at step two.  *Id.*
> (emphasis added).  As long as the ALJ finds one severe impairment, the ALJ may
> not deny benefits at step two but must proceed to the next step.  Thus, the failure
> to find a particular impairment severe at step two is not reversible error when the
> ALJ finds that at least one other impairment is severe.

*Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).  Here, the ALJ found five other

impairments were severe and proceeded through the other steps in the sequential evaluation

---

[11] To the extent Ms. Leo argues in her reply that the ALJ failed to properly weigh lay witness
statements and medical opinions in her analysis at step two, Doc. 25 at 4–5, the Court will not
address those arguments.  Ms. Leo does not identify which statements and medical opinions the
ALJ failed to weigh properly or explain how the ALJ failed to properly weigh that evidence.
The Court will not consider this issue because it has not been adequately briefed, nor was it
raised in Ms. Leo's opening brief.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir.
2012) (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of our
review . . . is limited to the issues the claimant . . . adequately presents on appeal." (internal
quotation marks omitted)); *Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783
(10th Cir. 2006) (failure to raise an issue in an opening brief waives the issue).

process.  AR 42–52.  Thus, the ALJ's failure to find Ms. Leo's migraine headaches severe at step two is not reversible error and does not warrant remand.

   B.   The ALJ's Error at Step Three is Harmless.

"'At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity.'"  *Drapeau v. Massanari*, 255 F.3d 1211, 1212 (10th Cir. 2001) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996)).  If the claimant has an impairment that is "listed," it is conclusively presumed to be disabling, and the claimant is entitled to benefits.  *Lax*, 489 F.3d at 1085.  The plaintiff has the burden at step three to establish that his or her impairment "meet[s] all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). The ALJ is required to discuss the evidence and explain why she found that appellant was not disabled at step three.  *Clifton*, 79 F.3d at 1009.

Ms. Leo contends that the ALJ erred by failing to assess whether she met Listing 12.11 based on her diagnosis of Asperger's Syndrome.  Doc. 20 at 20–22; Doc. 25 at 5–6.  To establish "that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment."  *Lax*, 489 F.3d at 1085 (internal citation omitted).  Paragraph A of each Listing consists of a set of medical findings describing the disorder addressed by the Listing.  20 C.F.R. pt. 404, subpt. P, app. 1, pt. A2 §12.00.[12]  Paragraph B criteria is a set of impairment-

---

[12] The Listings in effect from March 27, 2017 to August 21, 2017 were the Listings in effect at the time of the ALJ's decision on August 2, 2017.  Throughout this opinion, when the Court

related functional limitations.  *Id.*  Additional functional criteria are set forth in paragraph C.  *Id.*

The Commissioner will assess the paragraph C criteria only if he or she finds that the paragraph

B criteria are not satisfied.  *Id.*

Here, the ALJ found that Ms. Leo "did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1."  AR  43.  With regard to Ms. Leo's mental impairments,

the ALJ specifically addressed listings 12.04 (*Depressive, bipolar and related disorders*), 12.06

(*Anxiety and obsessive-compulsive disorders*), and 12.10 (*Autism spectrum disorder*).  *Id.*  She

did not, however, make any specific findings or discuss the evidence or reasons for determining

whether Ms. Leo met the criteria for Listing 12.11 (*Neurodevelopmental disorders*).[13]  It is error

for an ALJ to fail to analyze an applicable Listing.  *See Clifton*, 79 F.3d at 1009.

> A step three error, such as the one in this case, does not automatically require
> remand.  Instead, we must consider whether "confirmed or unchallenged findings
> made elsewhere in the ALJ's decision confirm the step three determination under
> review."  *Fischer-Ross v. Barnhart,* 431 F.3d 729, 734 (10th Cir. 2005).  If such
> findings "conclusively preclude Claimant's qualification under the listings at step
> three" such that "no reasonable factfinder could conclude otherwise," then any
> step three error is harmless.  *Id.* at 735.  If, however, there are no findings that
> "conclusively negate the possibility" that a claimant can meet a relevant listing,
> *see id.*, we must remand to the ALJ for further findings, *see Clifton,* 79 F.3d at
> 1009–10.

*Murdock v. Astrue*, 458 F. App'x 702, 703–04 (10th Cir. 2012) (unpublished).

---

refers to the Listings, it is referring to the Listings in effect from March 27, 2017 to August 21,
2017.  *See Putnam v. Comm'r, SSA*, 789 F. App'x 694, 699 (10th Cir. 2019) (unpublished)
(stating that the new rules are effective January 17, 2017, and federal courts should review
agency decisions using the rules in effect at the time of the agency's decision).

[13] The parties disagree about whether Asperger's syndrome can be categorized under Listing
12.11 as a neurodevelopmental disorder.  *Compare* Doc. 20 at 3 n.1 (arguing that Asperger's
syndrome is a type of autism and that autism is a neurodevelopmental disorder) *with* Doc. 24 at 8
(arguing that Asperger syndrome is an autism spectrum disorder).  The Court will not decide
whether Asperger's syndrome is a neurodevelopmental disorder but will accept *arguendo* that
Listing 12.11 is applicable for the purposes of this opinion.

Listing 12.04 and 12.06 have three paragraphs, designated A, B, and C. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A2. To establish disability pursuant to either Listing 12.04 or 12.06, a claimant's mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C. *Id.* Listings 12.10 and 12.11 have only two paragraphs—A and B—and to meet or equal these Listings, the mental impairment "must satisfy the requirements of both paragraphs A and B." *Id.* Paragraph B for each of these listings is identical and requires:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> > 1. Understand, remember, or apply information (see 12.00E1).
> >
> > 2. Interact with others (see 12.00E2).
> >
> > 3. Concentrate, persist, or maintain pace (see 12.00E3).
> >
> > 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. pt. 404, subpt. P, app. 1, pt. A2 §§ 12.04, 12.06, 12.10, 12.11.

Because paragraph B is identical for Listings 12.04, 12.06, and 12.10, the ALJ "considered whether the 'paragraph B' criteria were satisfied." AR 43. The ALJ found that "[b]ecause the claimant's mental impairments did not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria were not satisfied."[14] AR 44. Ms. Leo does not argue that analyzing the paragraph B criteria together for Listings 12.04, 12.06, and 12.10 was improper. She also does not contend that the ALJ improperly analyzed the paragraph B criteria. Instead, Ms. Leo contends that the ALJ should have included Listing 12.11 in her decision. But as noted above, paragraph B of Listing 12.11 is identical to paragraph B for

___
[14] The ALJ also analyzed paragraph C criteria for listings 12.04 and 12.06 which are not at issue here. AR 44.

Listings 12.04, 12.06, and 12.10. Even if the ALJ had analyzed Ms. Leo's mental impairments under Listing 12.11, the outcome would not have changed. The ALJ simply would have analyzed the paragraph B criteria together—as she did with the other listings—and come up with the same result.[15] Accordingly, the ALJ's findings conclusively preclude Ms. Leo's qualification under listing 12.11 at step three, and no reasonable factfinder could conclude otherwise. The alleged error at step three is therefore harmless.

    C. <u>The ALJ Improperly Relied on the VE Testimony at Step Five</u>.

At step five, it is the Commissioner's burden to establish that—considering the claimant's age, education, work experience, and RFC—work exists in significant numbers in the national economy that the claimant can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001); *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) ("If the ALJ concludes that the claimant cannot perform any of his past work with his remaining RFC, the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have."). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

An ALJ may use a vocational expert at step five to supply an opinion about the claimant's ability to perform work in the national economy. *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). Whether evidence is admissible in a social security case does not depend on the Federal Rules of Evidence. *Purdy*, 887 F.3d at 15. "[A]n ALJ is given express

---

[15] Ms. Leo further alleges she would have met the childhood listing 112.10. Doc. 20 at 21. Assuming *arguendo* that Listing 112.10 applies, it also contains identical paragraph B criteria, and the ALJ would have evaluated it the same as Listing 12.10. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, pt. B2, § 112.10 (effective March 27, 2017).

authority to assess the reliability of evidence offered." *Id*.

Relying on the VE testimony, the ALJ found that Ms. Leo was able to perform jobs such as toy stuffer, eyeglass polisher, and addresser. AR 51. Ms. Leo contends that the VE's testimony is unreliable for several reasons. Ms. Leo first argues that the "addresser" job is obsolete. Doc. 20 at 25–26; Doc. 25 at 6–7. Second, Ms. Leo faults the VE's testimony for not considering her mental limitations when identifying jobs that Ms. Leo could perform. Doc. 20 at 26. Third, Ms. Leo argues that the ALJ's conclusion that she could perform the toy stuffer and eyeglass polisher jobs is not supported by substantial evidence. *Id*. at 26–27. Finally, Ms. Leo contends that the numbers of jobs is not reliable because the VE was unable to identify the methodology used by the computer software used to calculate those numbers. *Id.* at 27–28. The Court will address each argument in turn.

1. *The "Addresser" Job*

Ms. Leo first argues that the VE testimony is not reliable because the DOT number used by the VE does not correlate to the job of "addresser" but instead is the DOT number for "direct-mail clerk"—a job not identified by the VE as a job Ms. Leo can perform. Doc. 20 at 25–26. This typographical error is harmless. The DOT number for the Addresser job is 209.587-01**0**. https://occupationalinfo.org/20/209587010.html (last visited 2/4/2020) (emphasis added). The VE testified that the DOT number for the addresser job was 209.587-01**8**, which is the DOT number for direct-mail clerk. https://occupationalinfo.org/20/209587018.html (last visited 2/11/2020) (emphasis added). The last DOT number for addresser and direct-mail clerk were apparently transposed by the VE. It is clear from the record, however, that Ms. Leo and her counsel understood that the VE intended to identify the job of addresser rather than direct-mail clerk. At the hearing, Ms. Leo's counsel clarified with the VE that one of the three jobs she

identified was, in fact, "addresser."  AR 83.  The error in the DOT number itself is harmless, and the Court will not remand on this basis.

Ms. Leo further complains that the job of addresser is obsolete.  Ms. Leo's counsel cites a 2011 study that found that the job of addresser "might be obsolete" and that "[i]t is doubtful that these jobs, as described in the DOT, currently exist in significant numbers in our economy." Doc. 20-1 at 7.  Nevertheless, agency regulations and policy direct ALJs to consider the DOT as "reliable job information" and to "rely primarily on the DOT . . . for information about the requirements of work in the national economy" for disability determinations.  SSR 00-4p, 2000 WL 1898704, at *2; 20 C.F.R. § 404.1560(b)(2); 20 CFR § 404.1566(d); SSR 82-61, 1982 WL 31387, at *2.  Although the DOT may be dated, ALJs still may rely on it.  *See Haddock*, 196 F.3d at 1089–90 (holding the ALJ is allowed to rely on the DOT at step five); *Rivera v. Berryhill*, 242 F. Supp. 3d 1226, 1244 (D.N.M. 2017) ("the regulations explicitly list the DOT as an example of a publication from which the administration will take administrative notice of job data").

Here, it was proper for the ALJ to rely on the VE testimony based on the current DOT. Whether the DOT is relevant to today's job market is not an issue for this Court to decide.  The Court's role in Social Security cases is limited to determining whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied.  The Court will not determine the validity of the resources used by the Commissioner when the Commissioner has followed the correct legal standards.  The Court finds no reversible error in the ALJ's reliance on the VE testimony identifying the addresser job.

2. *The Court Will Not Address Ms. Leo's Argument that the VE Failed to Consider the Mental Demands of the Identified Jobs.*

Ms. Leo argues that the VE's testimony is unreliable because the VE could not address the mental limitations or mental demands of the jobs she identified. Doc. 20 at 26; Doc. 25 at 7–8. "A motion, response or reply must cite authority in support of the legal positions advanced." D.N.M.LR-Civ. 7.2. Ms. Leo's attorney does not submit any legal authority that establishes that a VE must address the mental demands of occupations or how those mental demands must be addressed by the VE.[16]

Further, at the hearing, the VE and the ALJ explained to Ms. Leo's counsel that he needed to express mental limitations as a vocational term and not a psychological or medical term. AR 90. The VE explained that she could address limitations that are "marked, moderate, or mild." *Id.* Ms. Leo's counsel then asked the VE questions identifying her mental limitation in vocational terms. He asked if a hypothetical person who was off task 15 percent of the time would be able to perform the jobs identified by the VE. AR 90. He also asked whether an individual who can have no contact with coworkers could do these jobs. AR 91. The VE agreed that the hypothetical person described by Ms. Leo's counsel could not perform the jobs she identified. AR 90–91.

Ms. Leo does not direct the Court to any evidence that suggests she would be off task 15 percent of the time or could not have any contact with coworkers, and she does not explain how these facts render the VE testimony unreliable. To meet her burden in this case, Ms. Leo must not only point to evidence that she claims the ALJ failed to discuss or adopt, but also say why it was significantly probative. *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2004). Ms. Leo has

---

[16] In her reply, Ms. Leo directs the Court to the Vocational Expert Handbook, but this handbook does not have the force of law and does not act as a substitute for legal authority. Doc. 25 at 8.

not sufficiently developed this argument for the Court's review. The Court will not consider this issue because it has not been adequately briefed. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing *Chambers v. Barnhart,* 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of our review . . . is limited to the issues the claimant . . . adequately presents on appeal.") (internal quotation marks omitted)).

   3. *There is an Apparent Conflict Between the VE Testimony and the DOT That Was Not Resolved by the ALJ.*

At step five, the burden shifts to the Commissioner to show that "there are sufficient jobs in the national economy for a hypothetical person with [the claimant's] impairments," *Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005), "given her age, education, and work experience," *Lax*, 489 F.3d at 1084. The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). After the Tenth Circuit's holding in *Haddock*, the Social Security Administration promulgated Social Security Ruling ("SSR") 00-4p which states that

> before relying on VE . . . evidence to support a disability determination or decision, our adjudicators must:  Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT) . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). SSR 00-4p goes on to say that "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] **must**

elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." *Id*. at *2 (emphasis added). "The [ALJ] **must** explain the resolution of the conflict irrespective of how the conflict was identified." *Id*. at *4 (emphasis added).

The Tenth Circuit has addressed the interplay between a claimant's RFC and the reasoning levels listed for jobs in the DOT.[17] *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). In *Hackett*, the ALJ found the claimant had the RFC to perform "simple and routine work tasks." 395 F.3d 1176. The ALJ relayed this RFC to the VE, and the VE testified that a claimant with this RFC would be able to perform the jobs of surveillance-system monitor and call-out operator. *Id*. According to the DOT, these jobs both require a reasoning level of three. *Id*. Under the DOT, a reasoning level three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id*. The Tenth Circuit held that there was an apparent, unresolved conflict between "simple and routine work tasks" and jobs requiring level three reasoning. *Id*. The Tenth Circuit remanded the case to allow the ALJ to resolve that conflict. *Id*. There was "no indication in the record that the VE expressly acknowledged a conflict with the DOT or that he offered any explanation for

---

[17] Each occupation in the DOT includes General Education Development ("GED") levels. The GED level for each occupation can be found in the "definition trailer" following the DOT description of each occupation. The GED component is divided into three sub-components: Reasoning Development (R); Mathematical Development (M); and Language Development (L). *See* APPENDIX C – COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. For example, the definition trailer for toy stuffer reads: GOE: 06.04.34 STRENGTH: S **GED: R2 M1 L2** SVP: 2 DLU: 77. https://occupationalinfo.org/73/731685014.html (last visited January 16, 2020) (emphasis added). "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective." *Id*.

the conflict." *Id.* at 1175.

This case is similar to *Hackett*. Here, Ms. Leo contends that according to the DOT, the jobs of toy stuffer and eyeglass polisher require her to perform math calculations that conflict with the hypothetical the ALJ gave the VE, and with her RFC. Doc. 20 at 26–27; Doc. 25 at 8–9. Ms. Leo argues that the math requirements of the toy stuffer and eyeglass polisher jobs are such that those jobs would be eliminated for someone who should not be required to perform math calculations, rendering the VE testimony unreliable. *Id.* I agree.

The toy stuffer and eyeglass polisher jobs identified by the VE both have a mathematical development level of 1.[18] A math level 1 job requires the educational background to

> Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound.

*See* 731.685-014 STUFFER, DICOT 731.685-014 (G.P.O.), 1991 WL 679811 (Jan. 1, 2016); 713.684-038 POLISHER, EYEGLASS FRAMES, DICOT 713.684-038 (G.P.O.), 1991 WL 679267 (Jan. 1, 2016). On the other hand, the ALJ's RFC stated that Ms. Leo should not be required to perform math calculations at all. *See* AR 45, 81. Accordingly, there is an apparent, unresolved conflict between the RFC that requires that Ms. Leo "not be required to perform math calculations," AR 45, 81, and jobs requiring level-1 math.

In this case, as in *Hackett*, the ALJ failed to resolve the conflict. Although the ALJ asked the VE to advise her of any conflict between her testimony and the DOT, AR 80, the VE did not offer any testimony that expressly acknowledged a conflict with the DOT or offer any explanation for the conflict. Without any explanation by the VE, the Court will not assume that

---

[18] The addresser job identified by the VE also has a mathematical level of 1. https://occupationalinfo.org/20/209587010.html (last visited 2/3/2020).

the toy stuffer and eyeglass polisher jobs do not require any mathematical computations. Thus, substantial evidence does not support the ALJ's finding that these are jobs that Ms. Leo can perform. The ALJ failed to resolve this conflict, and the case will be remanded so that the ALJ can resolve it.

The Commissioner argues that the GED levels listed in the DOT, including math levels, do not describe the specific mental or skill requirements of a job, but instead "embrace[] those aspects of *education* (formal and informal) which are required of the worker for satisfactory job performance." Doc. 24 at 14 (quoting DOT, App'x C, 1991 WL 688702 (emphasis added)). The Commissioner cites two unpublished Tenth Circuit cases in support of this argument: *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished), and *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) (unpublished). However, these cases did not cite *Hackett*, much less reconcile their reasoning with its holding. And, because they are unpublished, they are not precedential. 10th Cir. R. 32.1(A). Lower courts must follow *Hackett* over the unpublished cases. The fact that *Hackett* did not address this particular argument does not undermine its precedential effect. *See Leyba v. Colvin*, No. CV 15-903 GBW, 2016 WL 9777219, at *4 (D.N.M. Sept. 23, 2016) (collecting cases in which "courts have held that, to the extent that the unpublished opinion in *Anderson* is in conflict with *Hackett*, the rationale of the latter should prevail"). The rule announced in *Hackett*—that conflicts between the GED and RFC must be resolved—requires remand in this case.

4. *The VE's Testimony Regarding the Number of Jobs is Reliable*.

Finally, Ms. Leo contends that the VE testimony is not reliable because the VE obtained the number of jobs from the computer software program "SkillTRAN" but did not know the

methodology used by the computer software in arriving at the number of jobs. Doc. 20 at 27–28; Doc. 25 at 9–10. This argument is without merit.

Regulations require the Commissioner to take administrative notice of job information provided by the DOT. 20 C.F.R. § 404.1566. The DOT includes detailed descriptions of jobs (classified by their exertional and skill requirements) that exist in the national economy, 20 C.F.R. § 220.134(a), but does not provide the numbers of jobs available. Consequently, the ALJ either must look to other reliable sources that provide the numbers of jobs available in the national economy for a particular DOT number, or the ALJ must obtain the testimony of a vocational expert to provide that evidence. *See* 20 C.F.R. § 404.1566(d) (the ALJ may "take administrative notice of reliable job information available from various governmental and other publications"); *see also Rogers v. Astrue*, 312 F. App'x. 138, 142 (2009) ("The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof."). In this case, the ALJ chose to rely on the testimony of a vocational expert. AR 51.

Ms. Leo complains that the VE's reliance on the "SkillTRAN" software is not reliable because the VE was unable to explain the methodology used by the software company in calculating the numbers of jobs in the national economy. Doc. 20 at 27–28; Doc. 25 at 9–10. Ms. Leo cites to a case from the Seventh Circuit—*Donahue v. Barnhart* 279 F.3d 441 (7th Cir. 2002)—in support of the proposition that the VE's testimony about the number of jobs must be based on reliable methods. Doc. 20 at 27–28. The Seventh Circuit held that "[a] finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 808 (2019) (internal citation and quotations omitted). "Evidence is not

'substantial' if vital testimony has been conjured out of whole cloth." *Id.* "The Seventh Circuit stands alone, however, in imposing a *Daubert*-like[19] requirement on ALJ's in Social Security cases." *Purdy v. Berryhill*, 887 F.3d 7, 16 (1st Cir. 2018) (collecting cases).

For example, in *Pedone v. Berryhill*, No. 16-CV-02767- STV, 2018 WL 460063 (D. Colo. Jan. 18, 2018), the Colorado district court rejected the same argument made by Ms. Leo in this case. The court explained that "[c]onsistent with the ALJ's burden at step five, courts that have upheld the use of SkillTRAN's Job Browser Pro database or similar software did so only where the software was one of several resources utilized by the VE in making an assessment," or where the VE testified as to the reliability of the numbers derived from the software. *Id.* at *7 (collecting cases). I agree with the majority of courts that have upheld the use of a computer program where there is additional evidence, including VE testimony, as to the reliability of the numbers generated by the SkillTRAN software.

Here, the VE testified that SkillTRAN derives its numbers through research with the Department of Labor and other resources. AR 84. The VE testified that she used the computer program and "the Department of Labor, Dictionary of Occupational Titles, the various [INAUDIBLE] cross references, and they have other forms of employment that they use." AR 84–85. The VE explained that while she did not know the exact methodology used by the SkillTRAN software, AR 84, she believed the numbers were accurate because

> . . .they do it a year in advance, so according to the research which I've just spoken to the Department of Labor, it's collected in a three-year survey, and schedule adjusted annually at the national, state, and regional levels. The data on employment is reported by occupation for full-time wage and salary workers, employment statistics and I've relied on their sources . . . .

---

[19] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (1993).

AR 85.  The VE further testified that most rehabilitation counselors and vocational experts rely on SkillTRAN software.  *Id*.  In other words, she testified to "a reliable and practical basis of fact on which analysis was performed, and to a wide reputation for reliability."  *Purdy*, 887 F.3d at 17.  Accordingly, the ALJ properly relied on the VE testimony regarding the number of jobs in the national economy.

    D.   <u>The Court Will Not Address Whether Ms. Leo Waived Her Challenge to the Constitutional Validity of the Appointment of the ALJ</u>.

Citing *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), Ms. Leo contends that at the time of the hearing, the ALJ was not properly appointed under the Constitution's Appointments Clause, and therefore she did not have legal authority over this case.  Doc. 20 at 28; Doc. 25 at 10–12; Doc. 30.  The Commissioner does not dispute that the ALJ had not been properly appointed under the Appointments Clause at the time of the hearing.  *See generally* Doc. 24 at 16–23; Doc 29.  The Commissioner contends, however, that Ms. Leo has waived this argument because she did not timely raise it before the ALJ or the Appeals Council.  *Id*.  The Court will not address this issue. On July 16, 2018, the Acting Commissioner ratified the appointments of all SSA ALJs following the Supreme Court's decision in *Lucia*.  SSR 19-1p, 2019 WL 1324866, *2 (Mar. 15, 2019). The ALJ who hears this case on remand will be properly appointed, and there is no need for the Court to decide whether the ALJ who initially decided this case was properly appointed pursuant to *Lucia*.

**VI.**    **Conclusion**

For the reasons stated above, I find that the ALJ applied the correct legal standards at steps two and three, but her decision at step five was not supported by substantial evidence because there was an unresolved conflict between the VE testimony and the DOT.  The Court will not address Ms. Leo's *Lucia* claim.

I further find that the Commissioner's position was substantially justified. The Supreme Court has defined the term "substantially justified" as "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "[A] position can be justified even though it is not correct, and . . . it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566 n.2.

"In determining whether the government's position was reasonable, the trial judge must make a separate review of the government's position to determine whether it was substantially justified." *Hadden v. Bowen*, 851 F.2d 1266, 1267 (10th Cir. 1988). This includes the government's position "both in the underlying agency action and during any subsequent litigation." *Id.* (internal citations omitted). "The government's success or failure on the merits at each level may be evidence of whether its position was substantially justified, but that success or failure alone is not determinative of the issue." *Id.*

In this case, the Commissioner's position was substantially justified. Of the four issues raised by Ms. Leo, the Court is remanding on only one sub-issue—whether there was a conflict between the VE testimony and the DOT. The Commissioner's position, furthermore, was reasonable based on the unpublished cases he cited, even though that position was incorrect. Overall, the Commissioner's position was substantially justified.

IT IS THEREFORE ORDERED that plaintiff Hilary M. Leo's Motion to Reverse and Remand Administrative Agency Decision (Doc. 19) is GRANTED, and this case is REMANDED to the Commissioner for further proceedings consistent with this opinion.

Laura Fashing
United States Magistrate Judge
Presiding by Consent